Here's the next case, a Tester Value Master Fund v. Republic of Argentina. Good morning, Chief Judge Katzmann, and may it please the Court, let's begin with the counter-signature issue. Argentina's position is that it could circulate a global form offer, it could solicit the acceptance of that offer by the world, and yet as a matter of law, it could bar contract formation on that offer by withholding its own signature. Now, your colleagues in three sister circuits of appeal have rejected that argument on essentially the same facts. The Heffaly in the third, Wygod in the seventh, and Corvello in the eighth, there's no counter-signature, and in each case, the Court rejects disposing of the contract formation argument on a summary motion, and says... So the last paragraph of the agreement schedule, this is on 233 of the appendix, states, I quote, by executing counterparts of this agreement in the space provided below and exchanging those counterparts, the parties agree to be bound by the terms of this settled agreement. And below that, there are two open signature lines, right? One has an ambiguous slash S in it, but yes, Your Honor. One for each side. So why is this not an express reservation of the right not to be bound in a settlement agreement where, where, where, where is absent the Republic agent's signature? Your Honor, in, in a couple of, there are a couple of answers to that. First, right up front in the instructions, and all of these documents were entirely drafted by Argentina. There's no negotiation here. Right up front in the instructions, it says, instructions for bondholders to accept its settlement proposal. I can't accept Mr. Boccuzzi's proposal if my acceptance requires his signature. So that's an internal inconsistency. In the bolded text at page 91 of the appendix, instruction five. Are these instructions part of the contract? Absolutely, Your Honor. What, what happened here was a two, a two-step process, admittedly infelicitously drawn by Argentina, but what was here was an instruction for the globe of bondholders to accept. And the way you accepted was, set out in instruction five, you filled out your form, you signed it, you sent it to an email address by a certain hour of a certain day, and then it says, you will have the settlement agreement under the formula. What then happens is, under the master settlement agreement, the agreement schedule, which is the document you just referred to, will become an integral part of that offer and acceptance by formula. And because the agreement schedule reduces a schedule of bonds to a single number, Argentina must have a chance to reconcile that the math has done, been done correctly. The point is that when you have internally inconsistent language like this in a form document from the offeror, and then when you have the offeror's extraordinary conduct that shows, beyond any doubt, that it considered itself to be bound, you have an evidentiary record that can't be disposed of on Rule 12. You started to quote the instructions, but the focus, it seems to me, is, and what hasn't been quoted, is as clear as clear can be. The holder must complete, sign, and send the agreement schedule to the Republic, including the information set forth in item three above. That agreement schedule, when countersigned by the Republic, shall constitute a binding agreement between the parties to settle all claims in respect to the bonds and the terms contained in the master settlement agreement. So the agreement consists of the master settlement agreement, the agreement schedule, and the instructions. I start, I finish with those words in the instructions which are part of the agreement. That agreement schedule, when countersigned, shall constitute a binding agreement. How could you get less clear than that? Well, you could, for example, have the facts that were presented to your colleague, Judge Stein, in the Associated Credit case, which involved a purchase order that said there can be no contract under this purchase order unless it is countersigned. It was not countersigned. And the Southern District correctly held that because of all the other facts surrounding the circumstances, it could not reject contract formation on Rule 12b. Here, Argentina went into the District Court on the 29th of February. It pointed to a submission by Red Pies, another bondholder. The submission was not countersigned. Same instructions, same form, same timetable. And under oath, Argentina said, this is a contract, and this is a reason that the District Court should give us relief. The same is essentially true in the Seventh and Ninth Circuit cases of Corvello and Wygod, which involve a form document issued by a bank. It contemplates a countersignature. And the courts properly hold that if the countersignature requirement is a threshold requirement for contract formation, then the whole thing is illusory. There is no offer. Now on February 11th, Argentina had described to the world and the District Court in its title says, here are instructions for bondholders to accept the offer. The language you paraphrased is from instruction number two, quoted, I'm sorry, Your Honor. It's from paragraph two, parties may become a party to the settlement agreement by executing and exchanging with Argentina, and it follows. In that paragraph two, there's no reference to a countersignature. They hang their weight on the word exchanging. But even if they're correct about that, what do they do with instruction five? There's nothing in instruction five about a countersignature. It says if you hit this thing by the hour of the date, you will have the settlement about. You should ignore the language I quoted. No, Your Honor. You should remand to the District Court for a complete evidentiary hearing based on, as you indicated in Winston, both the facts and the deeds, as to whether these parties had an intention to be bound when they struck these agreements at the end of February of this year. Now, you disagree with the view that not all terms of the alleged settlement agreement have been agreed upon? I do disagree, Your Honor, yes. Because the settlement agreement is a formula. If you do a certain thing by a certain date, you Don't they disagree over the proposed settlement amount? Well, I think Your Honor is now on to the statute of limitations question. And for sure there is a disagreement by the parties, between the parties on that. But there is evidence in the record, you know, sworn testimony from witnesses who talked to their side about what they meant. There's text in the document that supports our view. That's another issue for a full evidentiary hearing before the District Court.  Thank you. Thank you. You'll have two minutes. Good morning, and may it please the Court. Carmine Bacuzzi for the Republic of Argentina. I think the Court has seized on the This is Judge Winter. Can I ask you a couple questions? Yes, Your Honor. In your brief, you say that the Republic of Argentina had complete discretion, use the word flexibility, to refuse to enter into a settlement agreement with the plaintiffs. And that, this is at page 37 of your brief, and that the Republic at the time the plaintiffs had submitted the documents as required by both the instructions and the agreement, the Republic still had to be willing to make a settlement payment based on the information. Absolutely. What do you say about an argument that that position makes all these documents virtually surplusage? For example, I believe one of the instructions, one of the statements is that the amount submitted by a plaintiff, if properly it complies with the methodology and the instructions, will be discounted by 30%. That becomes surplusage, does it not? No, Your Honor. What happens is the documents are explaining how the proposal that Argentina is making to try to resolve these claims, but it's all subject to the ultimate countersignature requirement by the Republic. So, just to go to the Wygod case that- Excuse me. The Republican refused to do on any grounds whatsoever, not just statute of limitations, not because they don't like the particular plaintiff, or because they've gotten what they wanted out of the district court and no longer need to settle with these particular plaintiffs. That's correct. As any contracting party, it is free to contract as it will contract. And New York law, in the case that my adversary didn't reference- No one would dispute that. But why would you set out a specific methodology with a discount if you were merely offering to consider any document that complied with the instructions? If you're just to consider whether you're willing to do it, why would you put in these other statements? Because the Republic was trying to resolve billions of dollars of claims across thousands of holders throughout the world, many of whom were completely unknown to the Republic. So it needed to explain clearly what it was proposing. The instructions also are filled with language that what was contemplated, what was possible, and then ultimately subject to the countersignature requirement. So explaining what it was that we were proposing to people in terms of what was being put out there was necessary to communicate how we were hoping to resolve these claims. To the extent that claims came in and either were wrong or, in the case of the plaintiffs, were trying to resolve what the Republic viewed as time-barred claims, then the Republic reserved its right, as well as just for mathematical errors or any other reasons, to return it to them to not countersign, to further negotiate with them and try to resolve it. And that, this Court, when this Court approved the conditional vacatur of the Pari Passu injunctions, noted that very process that was going on. And so, the Schecht v. Francis case, and I think it's important to focus on that. Tell me specifically why you would include the language, quote, those injunction bondholders are executed and delivered to the email address below an agreement scheduled at the 5 p.m. February 19th, et cetera, will have the settlement amount under Options 2 and 3 of Section 4 above calculated using a discount of 30%. Why would you include that if you were merely offering to negotiate? Because people needed to understand what it was that we were proposing and we were saying, and we're allowed to explain that and make it subject. A reasonable person understanding that would think you were offering to settle for the amount calculated under Options 2 and 3 and discounted by 30%. It's exactly what they would think. But there's nothing inconsistent about that proposal of settlement, Your Honor, and are saying it's still subject to our countersignature. I'm asking why you would include that if all you were doing was offering to negotiate. Because to the extent that people did what was set out in that paragraph and then we countersigned, that is what would happen. And to the extent that the other conditions that were put at the end of the master settlement agreement were fulfilled, then that would happen. So it was there because we were explaining what, subject to all the conditions being met, including the countersignature, would happen. If we didn't explain it in those terms, people would not understand what was potentially available to them. There's no other way, unless we were to draft this in every paragraph that says if subject to every other provision in this document, including the countersignature. And the bolded language that Your Honor is referring to is in the same, it's followed immediately by the paragraph that talks about the countersignature requirement. So it's all laid out together and it works together. And in the Scheck versus Francis case, just to return to that, the countersignature requirement was not even in the agreement between Ms. Francis and Mr. Scheck. My line of questioning, and that goes out, you're saying these paragraphs were somehow necessary because they were necessary. I'm saying why include them at all? But then people would not know what we were proposing, Your Honor, if there is no... You were proposing, what you were proposing is what you say at page 30, you now say at page 37 of your brief. That you could refuse any settlement. You could make a discount of 50%, discount of 80%. You could propose a settlement or reject it because of the color of the hair of the person sending in the information. Why do you need all these... Why did you need all these paragraphs? I'm sorry, I missed the last part of your question. Why did we need... Yeah, why do you need to say 30%? Why do you need to have all these paragraphs and instructions if you're just offering to negotiate? Your Honor, what we're proposing and we're offering is to give 30% to folks who submit their bonds. If we didn't explain what we were doing, then people would have no interest at all in submitting their list of bonds to us for consideration by us. This is nothing more than what's... Now you're saying you did agree to pay. Excuse me? With inaccurate information. And a discount by 30% if they submitted it. If they submitted, if the bonds checked out and they were countersigned, then there would be an agreement. This is nothing more than a manifestation of our willingness to enter to a bargain and that's conditioned on our further manifestation of assent, the countersignature. And the Wygod case, which my adversary quoted, talks about that when the promisor conditions a promise on his own future action or approval, there is no binding offer. The proposal or the offer that is being made is subject to that further manifestation of assent. And that's from the Restatement of Contract, Section 26. So what we did, and again, if you look at the cases where a countersignature is asked for and not given, the underlying contract that the court finds there is no intent to be bound in the absence of the countersignature, the underlying contract would be filled with language just like the language that Your Honor is pointing to. Party X will do this. Party Y will do that. But given the request and the statement that the party would not be bound absent a countersignature, if the party doesn't countersign, then there's no binding agreement. That's the holding of the Schecht case. And that's the holding of the Longo case where this court applied Schecht, and again, finding the explicit statement that no one would be bound absent a countersignature, said that there was no agreement. And I would point out that Schecht was decided on a motion to dismiss, and the agreement language here is quite explicit in terms of the countersignature requirement. The relevant language is at 223, 225, and 233. And everything can be read together. I think plaintiffs are pushing a position where you have to ignore the statement that says when countersigned by the Republic will be a binding agreement, as opposed to if one accepts that, then you can read all this language together, and we're simply saying to the world, this is how we're proposing to resolve. If you do this and we countersigned, we will have a deal, and we will be done. If that doesn't happen, then there will be continued negotiation, which this court recognized could happen. At this point, we've now settled the vast majority of the claims against the Republic, including by parties represented by counsel here today on the other side of the table from me. And all of those settlements have been pursuant to countersigned agreements in principle, each and every one of them. So the district court was quite correct to find that the case was appropriately dismissed and that it would be futile to allow amendment because this bar to the formation of a contract explicitly set out in the governing documentation means that there can be no agreement. One thing, just to help me to clear up something, didn't the Republic submit an agreement with Red Pines that didn't include a countersignature? There was attached to a declaration that went in... That's an example of a settlement. It went in. It was a mistake. It was acknowledged to be a mistake afterwards. Mr. Bausili was not opining on the ultimate legal conclusion about whether it was binding. Ultimately, Red Pines did settle pursuant to a countersigned agreement in principle. And, of course, they're not on this appeal, and the district court properly recognized that. And at most, if we had accepted that, that would have been... And we didn't. We settled with them pursuant to a countersigned AIP. But if we had accepted that as binding, that would have been a waiver as to our right to countersign as to that party and certainly wouldn't a cross-the-board waive to other parties that we were dealing with. My time is up unless there are further questions. Thank you. Your Honours, I have deep respect for my colleague, but he cannot say it's a mistake on a Rule 12b record. We deny it's a mistake. We say that it was contemporaneous evidence of what everyone understood at the time, that countersignature... Why would they have settled later on, then? Because, Your Honour, later on... First of all, Red Pines was a plaintiff in the underlying lawsuit in March. But what happened later on was now your opponent is a foreign sovereign. You can't enforce judgments. And the injunction had been lifted. And they were saying, we're not going to honour the contract. So Red Pines acted prudently in making whatever settlement they made, which is not here. The relevance of what happened on the 29th is just what did it show about the party's understanding and intention before there was litigation as to contract formation? Now, as to why, God, my brother cited the Wygod case, a line from it, but the holding of the case is to reverse a grant of dismissal under 12b-6. And I would just point out to follow up on Judge Winter's line of questioning of my friend, here is what Argentina said to the court on February 11th before it actually issued the documents. It said it was making a proposal, it contemplates two settlement offers, called them offers. The first offer will be open to holders of all FAA bonds. The second offer will be extended to holders of bonds subject to injunctions. I think the point of the questioning from the court, from Judge Winter, was simply there is no offer if they're free for any reason to withhold their counter signature. And that's what the Seventh Circuit said in Wygod and the Ninth Circuit agreed in Corvello and indeed essentially the same thing the Third Circuit in High Philly. We only want limited relief. We just ask you to remand this case for consideration of what you, the court taught in Martin, is necessary on one of these disputes about contract formation. A view of all of the acts and deeds of the parties at the time to see whether they had an expressed intention to form a contract. Thank you very much, Your Honor. Thank you both for your arguments. The court will reserve decision.